1 | AUSTIN B. KENNEY (State Bar Number 291201)
austin.kenney@stinson.com
2 | MEGAN N. ALDWORTH (State Bar Number 351462)
megan.aldworth@stinson.com
3 | STINSON LLP
19100 Von Karman Avenue
4 | Suite 700
Irvine, California 92612
5 | Telephone: 949.442.7110
Facsimile: 949.442.7118
6
Attorneys for Defendant BANK OF
7 | AMERICA, N.A. (erroneously sued as
Bank of America Corporation)
8

9 | UNITED STATES DISTRICT COURT

10 | NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID ZIGAL, Trustee of The Paul H. Davis Revocable Trust,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, a Delaware Corporation; and Does 1 through 20,<br><br>Defendants. | Case No. 3:25-CV-01683-LB<br><br>Hon. Magistrate Laurel Beeler<br><br>**DEFENDANT BANK OF AMERICA, N.A.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Hearing Date: October 2, 2025<br>Time: 9:30 a.m.<br>Crtrm.: B<br><br>Action Removed: February 18, 2025 |

# I. INTRODUCTION

Plaintiff David Zigal ("Plaintiff") in his capacity as Trustee of The Paul H. Davis Revocable Trust (the "Trust") brings this lawsuit to recoup $199,671 withdrawn from his account via twenty-one ACH transfers to unknown entities.

The Opposition fails to cure the Complaint's deficiencies addressed in BANA's Motion. First, UCC Division 11 does not apply to ACH transfers, so BANA could not have violated the section. Second, Plaintiff fails to allege a viable breach of contract claim because he fails to allege the terms of the contract from which such a breach could arise. Third, Plaintiff's negligence claim fails for lack of a duty of care and because it is barred by the economic loss rule. And fourth, Plaintiff's Opposition completely fails to address the injunctive and declaratory relief claim, such that it too shall be dismissed with prejudice.

Plaintiff at least got something right: the Opposition concedes the EFTA is inapplicable, such that the claim should be dismissed with prejudice, too.

For these reasons, discussed more thoroughly below, the Court should dismiss the Complaint.

# II. ISSUES TO BE DECIDED

BANA's Motion raises five issues for the Court's determination:

1. Whether the Complaint alleges a cause of action for breach of the California Commercial Code Section 11202, *et seq.*?

2. Whether the Complaint alleges a cause of action for breach of the Bank of America Deposit Agreement and Disclosures?

3. Whether the Complaint alleges a cause of action for negligence and gross negligence?

4. Whether the Complaint alleges a cause of action for violation of the Electronic Funds Transfer Act (15 U.S.C. § 1693 *et seq.*)?

5. Whether the Complaint alleges a cause of action for declaratory and injunctive relief?

/ / /

/ / /

## III. STATEMENT OF ALLEGED FACTS

Plaintiff is trustee for The Paul H. Davis Revocable Trust (the "Trust"). Dkt. 1, Ex. A ("Compl."), ¶ 1. The Trust owns a BANA account ending in x0816 (the "Trust"). *Id.* From January 12, 2023, through February 3, 2023, twenty-one ACH transfers totaling $199,671 occurred to entities which "had no prior dealing" with the Trust. Compl. ¶¶ 2, 4-5. "[Up]on information and [Plaintiff's] belief… on or about February 3, 2023 the Trust notified BANA of the unauthorized transfers." Compl. ¶ 15. BANA denied Plaintiff's claim(s). Compl. ¶ 17.

## IV. THE OPPOSITION FAILS TO CURE THE COMPLAINT'S DEFECTS

### A. The UCC Section 11202 Claim Fails

The Opposition argues that ACH transfers fall within the UCC's definition of a "payment order" because they are conducted via a "funds transfer" system and that BANA's Deposit Agreement supports this notion. But there are issues with these propositions.

First, Plaintiff alleges that funds were withdrawn out of his account by various entities via ACH transactions. Compl. ¶ 2. Plaintiff alleges that these ACH transactions were debited (i.e., withdrawn) from his account by these unknown entities, as opposed to Plaintiff (or someone acting on his behalf) sending the money from his account. *Id.* This is an important distinction for purposes of Division 11.

"Transfers of funds made through the banking system are commonly referred to as either 'credit' transfers or 'debit' transfers." Cal. U. Com. Code § 11104, cmt. 4. A credit transaction occurs when the payor instructs their bank to send funds, while a debit transaction occurs when the person to be paid initiates the request to withdraw funds from the payor's account. *Chantilly Auto Body, Inc. v. Truist Bank, N.A.*, 770 F. Supp. 3d 921, 924 (E.D. Va. 2025) ("a debit transaction arises where *the payee*—with authorization of the payor—submits the payment instruction *to the payee's bank*, which then removes the money from the payor's bank account"); *see also Lambert v. Navy Fed. Credit Union,* No. 1:19-CV-103-LO-MSN, 2019 WL 3843064, at *4 (E.D. Va. Aug. 14, 2019) (" 'debit item' clearly refers to a transaction that attempts

to withdraw money from the account, such as an ACH debit request.").[1]

Division 11 of California's Commercial Code applies to "funds transfers." Cal. U. Com. Code § 11102. A funds transfer is a "series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." (Cal. U. Com. Code § 11104. And a "payment order" is "an instruction of a sender to a receiving bank [] to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary" where "the receiving bank is to be reimbursed by **debiting an account of, or otherwise receiving payment from, the sender.**"[2] Cal. U. Com. Code § 11103(a), emphasis added. The significance of the bolded language is that UCC Division 11 "include[s] credit transfers … and [] exclude[s] debit transfers." Cal. U. Com. Code § 11104, Official Comm. 4; *see also Chantilly Auto Body, Inc.*, 770 F. Supp. 3d at 925 ("the Court finds and concludes as a matter of law that the transactions at issue were debit transactions, not credit transactions, and therefore not within the scope of [UCC Article 4A]"); *Lambert v. Navy Fed. Credit Union,* 2019 WL 3843064, at *4.

Moreover, contrary to Plaintiff's argument, the Deposit Agreement does not support the notion that ACH transfers are payment orders.[3] Plaintiff cites to a provision in BANA's Deposit Agreement regarding "items" which states that "items include all orders and instructions for the payment, transfer, or withdrawal of funds from your account…. [and] includes… ACH submissions…" (RJN, Dkt. 24, Ex. A, p. 9.) This excerpt is pulled from a subsection of the Deposit Agreement titled "Insufficient Funds – Overdrafts and Returned Items." Plaintiff attempts to apply this definition of an "item" to a much later, and unrelated, section of the Deposit Agreement titled "Funds Transfer Services," which refers to Division 11's funds transfer definitions of a "payment order" and "funds transfer." (RJN, Ex. A, p. 72.) However, as stated above, these are debit transfers not covered within those definitions / provisions of Division 11.

---

[1] For a further explanation of ACH debit transactions, see https://plaid.com/resources/ach/what-is-ach-debit/, and https://stripe.com/resources/more/ach-debit-an-in-depth-guide.

[2] The "sender" is "the person giving the instruction to the receiving bank." (Cal. U. Com Code § 11103(a)(5).) The "receiving bank" is "the bank to which the sender's instruction is addressed." (Cal. U. Com Code § 11103(a)(4).)

[3] The Opposition contains a footnote (p. 6, fn. 1) alleging that it is not appropriate for BANA to include a copy of the Deposit Agreement in its Motion to Dismiss. However, as stated in the Request for Judicial Notice (Dkt. 24), this Court may take judicial notice of documents that are incorporated by reference in the complaint. See *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

-3-

Even assuming Division 11 did apply, Plaintiff purports BANA has a wide sweep of duties thereunder which it does not have. Specifically, the Complaint alleges that under Division 11 BANA "a duty to process payment orders in good faith and exercise ordinary care" and that it breached that duty by (i) "processing the Fraudulent Transfers that were irregular, novel, and suspicious, given the history of Trust Account 0816," (ii) failing "to use commercially reasonable security procedures in Trust Account 0816, or otherwise exercise ordinary care, which would have prevented" the unauthorized withdrawals, (iii) failing "to employ commercially reasonable methods for providing security to the Trust against unauthorized payment orders," and (iv) failing to flag the unauthorized withdrawals and notify Zigal of the suspicious activity. Compl., ¶¶ 23-27.

Division 11 imposes no such duties; only sections 11201 and 11202 refer to "security procedures" and "commercial reasonableness," however, as a threshold issue they apply only "[i]f a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure …." Cal. U. Com. Code, § 11202(b). The Complaint, nor the Opposition, alleges that Zigal and BANA entered into such an agreement.

Because it alleges only the breach of duties not imposed by Division 11, the Complaint fails to state a viable claim for "breach" of the Commercial Code. The Opposition fails to cure this.

**B. The Opposition Fails to Cure the Flaws with Plaintiff's Breach of Contract Claim**

Plaintiff's second cause of action is for breach of BANA's Deposit Agreement and Disclosures (the "Deposit Agreement").

BANA's Motion points out that Plaintiff's Complaint alleges generalities rather than specific provisions of the contract breached by BANA. The Opposition attempts to overcome this issue by stating that Plaintiff has sufficiently plead the "legal effect of the contract." Opp., p. 13, ¶ 1. Specifically, Plaintiff alleges that BANA "agreed to safeguard [the Account] and prevent unauthorized transactions… and implement appropriate security measures." Compl. ¶ 31-32. He further alleges that BANA breached the Deposit Agreement by (1) failing to "detect, investigate, implement and maintain adequate security measures" to prevent the fraud (Compl. ¶33); (2) by

-4-

refusing to provide information related to the transactions, the identity of the scammers, or information that would assist Plaintiff in finding the scammers (Compl. ¶ 34); and (3) by "failing to return the funds from the transfers (Compl. ¶ 35). But these unsubstantiated characterizations of the contract terms are insufficient:

> "Pleading the legal effect of a contract is sufficient where the plaintiff supports its assertions with facts and testimonial evidence pointing to the plausible existence of contractual terms that would give rise to the asserted legal effect." *Shruhan*, 2024 WL 1589478, at *3. Here, the TAC does not recite the terms of the contract verbatim but instead provides a single sentence that makes unsubstantiated characterizations of the alleged contract terms. *See* TAC ¶ 182 ("[The contract's] terms were that Recology would perform waste collection for the ratepayers and the ratepayers would pay the just and reasonable rates set pursuant to ordinance."). Plaintiffs' unsupported characterization of the alleged contract's terms is not sufficient to plead the existence of a contract. *See Dorian v. Cmty. Loan Servicing, LLC*, No. 22-CV-04372-DMR, 2022 WL 7620460, at *6 (N.D. Cal. Oct. 13, 2022) ("A plaintiff fails to sufficiently plead the terms of the contract if he does not allege in the complaint the terms of the contract or attach a copy of the contract to the complaint.").[3] Accordingly, the Court DISMISSES Plaintiffs' breach of contract claim.

*Villarroel v. Recology Inc.*, 775 F. Supp. 3d 1050, 1065 (N.D. Cal. 2025).

Next, the Opposition argues that the Deposit Agreement contains "numerous provisions" to support the breach of contract claim. (Opp., p. 14, ¶ 2.) Not so. Plaintiff cites a few provisions in the deposit agreement to support this statement, but none go to show a breach.

First, he refers to a provision titled "fraud prevention and detection products" which states that that BANA offers fraud prevention and detection products "in some states" and that if the *customer* fails to abide by the services and products, then the *customer* is prevented from asserting claims against the Bank. (RJN, Ex. A, p. 50.) But nothing in this provision relates to or establishes a breach of the Deposit Agreement by BANA.

Plaintiff further argues that the following provisions of the Deposit Agreement are applicable:

/ / /

/ / /

**Our Investigation and Maximum Liability**

… Our maximum liability is the lesser of your actual damages proved or the amount of the missing deposit or the forgery, alteration or other unauthorized withdrawal, reduced in all cases by the amount of the loss that could have been avoided by your use of ordinary care…

**Indemnification and Limitation of Liability**

… You agree that the amount of any claim you have against us in connection with any account or transaction with us, whether brought as a warranty, negligence, wrongful dishonor or other action, is subject to reduction to the extent that: 1) negligence or failure to use reasonable care on your part, or on the part of any of your agents or employees, contributed to the loss which is the basis of your claim; and 2) damages could not be avoided by the use of ordinary care.

(Motion, Ex. A, pp. 50, 59.)

The first provision falls under the broader section "Reporting Problems" which covers when a customer reports an unauthorized transaction, problem, or issue with a statement. (*Id.* at p. 49.) The "maximum liability" section sets out that BANA's liability is capped at the lesser of the customer's actual damages or the amount of the "unauthorized withdrawal." Again, nothing in this provision shows a contractual duty by BANA that it breached.

The second provision cited above, and referred to by Plaintiff in the Opposition, simply states that if a customer has a claim against the Bank it is reduced to the extent the customer is at fault. Yet again, this does not show a contractual duty by BANA that it breached.

Plaintiff also generally refers to BANA's duty of "ordinary care" and conclusory alleges that BANA agreed throughout the Deposit Agreement that it would use " 'ordinary care' to prevent the unauthorized ACH transfers and that if it failed to do so, BANA would be liable for 'negligence.' " (Opp., p. 15, ¶ 1.) But missing from the Opposition is any support for this allegation, because there is none. Nowhere in the deposit agreement did BANA agree to prevent unauthorized ACH transfers or that it would be liable for negligence if it did the same. Plaintiff seemingly conflates the negligence claim with the breach of contract claim, but there are issues with this, as discussed below.

Moreover, BANA's duty to exercise ordinary care does not create the blanket wide sweep

-6-

of duties on the Bank that Plaintiff purports it does (as discussed above). "Ordinary care" is a term derived from Division 4 of the California Commercial Code ("Bank Deposits and Collections"), specifically Section 4103(a), which states that "the parties to the agreement [which varies the terms of Article 4A] cannot disclaim a bank's responsibility… to exercise ordinary care." Further, "ordinary care is established if the bank's 'procedure is reasonable and is commonly followed by other comparable banks in the area' and was followed by the bank in processing the checks in issue." *Espresso Roma Corp. v. Bank of America* (2002) 100 Cal.App.4th 525, at 532. As a threshold issue, Plaintiff does not allege any "bank deposits" or "collections" such that this law is invoked. Further, Plaintiff's conclusory allegations of breach do not show that BANA did not act reasonably or comparable to other banks.

For these reasons, the contract claim should be dismissed.

**C. The Opposition Fails to Save the Negligence Claim**

The Opposition argues that "it is well established that a bank owes a duty of care" and then again refers BANA's duty to "exercise ordinary care." But this is a far cry from establishing a negligence-based duty of care and completely ignores well-established California case law cited by BANA in its Motion.

Indeed, the Bank does not have any "implied duty 'to supervise account activity' or 'to inquire into the purpose for which the funds are being used.' " *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 537 (1998); *see also Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 481 (1996); *Das v. Bank of America, N.A.*, 186 Cal.App.4th 727, 742-43 (2010) (citing *Chazen*). While the bank has a duty to act with reasonable care in its transactions with its depositors, the bank is not a fiduciary and owes no duty to supervise account activity. *Kurtz-Ahlers, LLC v. Bank of America, N.A.,* 48 Cal.App.5th 952, 956 (2020) (citations omitted).)

The Opposition also completely ignores that this claim is barred by the economic loss rule, tacitly conceding it. *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014). BANA's Motion argues that Plaintiff's negligence claim is subject to the contractual economic loss rule because it alleges the same allegations for duty and breach as it did for the contract claim. Specifically, the Complaint alleges that BANA owed Plaintiff a duty to safeguard his account and

prevent unauthorized withdrawals and that it breached that duty by failing to implement adequate security measures and to act upon the suspicious nature of transactions. (Compl. ¶¶ 38-39.)

However, the "contractual economic loss rule" generally bars recognition of a duty of care and prevents recovery in tort for economic loss caused by negligence in performance of the contract. *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal.5th 905, 922-24 (2022); *Erlich v. Menezes*, 21 Cal.4th 543, 550–52 (1999). A plaintiff cannot recover under a negligence theory "for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004).

Moreover, as BANA previously explained, "the relationship between a bank and its depositor is … founded on contract, which is ordinarily memorialized by a signature card that the depositor signs upon opening the account." *Kurtz-Ahlers, LLC v. Bank of Am., N.A.*, 48 Cal.App.5th 952, 956 (2020), quoting *Chazen*, 61 Cal.App.4th at 537 (citations & internal quotes omitted). Therefore, a depositor generally may sue a bank only in contract, not tort for economic losses. *Kurtz-Ahlers,* 48 Cal.App.5th at 960-61; *Copesky v. Superior Court*, 229 Cal.App.3d 678, 694 (1991).

### D. Plaintiff's Opposition Concedes the EFTA Claim and the Declaratory and Injunctive Relief Claim Should Be Dismissed

The Opposition explicitly concedes the EFTA claim "should be dismissed." (Opp., p. 16, ¶ 4.) The Opposition also does nothing to address BANA's argument that the declaratory and injunctive relief claim should be dismissed. "Such a failure in an opposition brief constitutes abandonment of the claim." *Moore,* 73 F.Supp.3d at 1205 (internal citations omitted). "Moreover, where a plaintiff 'simply fails to address a particular claim in its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice.' " (*Id.*)

### V. CONCLUSION

For the reasons discussed in BANA's Motion, and those stated above, the Court should dismiss the Complaint.

///

-8-

CORE/3547001.0900/231319429.1
REPLY IN SUPPORT OF MOTION TO DISMISS

| | | |
|---|---|---|
| Dated: August 29, 2025 | | STINSON LLP |

By: */s/ Megan N. Aldworth*
AUSTIN B. KENNEY
MEGAN N. ALDWORTH
Attorneys for Defendant BANK OF AMERICA, N.A. (erroneously sued as Bank of America Corporation)